## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FIREMEN'S INSURANCE COMPANY OF       )
WASHINGTON, D.C.,                     )
                                      )
      Plaintiff,                      )
                                      )
      v.                              )    CIVIL ACTION NO. 3:10-CV-185
                                      )    JUDGE KIM R. GIBSON
WENVENTURE, INC., d/b/a Wendy's Old   )
Fashioned Hamburgers, WENDY'S         )
INTERNATIONAL, INC., ROBERT LEE HINES, )
and BRIAN H. KLAVUHN,                 )
                                      )
      Defendants.                     )

## MEMORANDUM OPINION AND ORDER

**GIBSON, J.**

### I. INRODUCTION

This matter comes before the Court on Plaintiff Firemen's Insurance Company of Washington, D.C.'s Motion for Judgment on the Pleadings (Doc. No. 18) pursuant to Federal Rule of Civil Procedure 12(c). Plaintiff asks this Court to enter a declaratory judgment in its favor stating that Plaintiff has no duty to defend or indemnify Defendants with regard to an ongoing lawsuit in the Court of Common Pleas of Cambria County, Pennsylvania. Plaintiff later requested that its motion be converted into a Motion for Summary Judgment. Doc. No. 23 at 2-3. Defendants Wenventure, Inc. and Wendy's International, Inc. [hereinafter "Defendants"] oppose the Motion. Doc. No. 25. For the reasons that follow, Plaintiff's Motion for Summary Judgment is **DENIED**.

## II. JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this action occurred in this district.

## III. FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2009, "L.R.E.", a former employee of a Wendy's restaurant in Bedford County, Pennsylvania, brought suit in the Court of Common Pleas of Cambria County, Pennsylvania, for claims stemming from two incidents at the restaurant involving Robert Lee Hines and Brian H. Klavuhn, also Wendy's employees at the time of the relevant incidents.[1] Doc. No. 1-2. The restaurant was operated by Defendant Wenventure, Inc. pursuant to a franchise agreement with Defendant Wendy's International, Inc. L.R.E. alleged, *inter alia*, that on March 15, 2007, when she was still a minor, Hines falsely imprisoned her in a bathroom at the restaurant and subsequently raped her. *Id.* at 9. Further, L.R.E. alleged that in June 2007, Klavuhn falsely imprisoned her and sexually assaulted her in a walk-in cooler, also at the Bedford County Wendy's.[2] *Id.* at 10. These incidents occurred despite L.R.E. having allegedly reported Hines' sexual harassment of her to supervisors prior to the rape. *Id.* at 8. She further contended that both Hines and Klavuhn had criminal backgrounds prior to their hire by Defendants, and that Defendants knew or should have been aware of these backgrounds when they hired them. *Id.* at 7-8. As a result of Defendants' alleged negligence, L.R.E. claimed that

---

[1] The plaintiff is identified as "L.R.E." in the underlying state action because she was a minor at the time of the events giving rise to her suit.

[2] Hines later pled guilty to sexual assault for this incident in Pennsylvania court on June 15, 2009. Doc. No. 1-2 at 36. Klavuhn pled guilty to indecent assault without consent in Pennsylvania court on September 8, 2009. *Id.* at 10. On December 17, 2010, this Court entered a default judgment against Hines and Klavuhn in the instant suit, finding that they were barred from claiming that Plaintiff Firemen's Insurance Company has a duty to defend and/or indemnify Defendants Wenventure, Inc., and Wendy's International, Inc. in the underlying suit in the Court of Common Pleas of Cambria County. Doc. No. 13.

2

she had sustained both physical and emotional injuries, leading to significant medical expenses, interference with her education, loss of earnings, and other incidental costs. *Id.* at 11. Consequently, L.R.E. brought fourteen claims against Hines, Klavuhn, and the instant Defendants. These included assault, battery, intentional infliction of emotional distress, and false imprisonment as to each of Hines and Klavuhn; and negligence, breach of fiduciary duty, negligent hiring, supervision and retention, failure to warn of risk of unreasonable harm, intentional failure to supervise, and punitive damages as to Defendants Wendy's International, Inc. and Wenventure, Inc. *Id.* at 12-24. On March 14, 2011, L.R.E. amended her complaint to include allegations of bodily injury resulting from the incidents, in addition to the aforementioned physical and emotional injuries. Doc. No. 23-1 at 10.

During the time relevant to the underlying state court suit, two insurance policies issued by Plaintiff to Defendants were in force. These were commercial general liability and commercial umbrella policies, both of which included provisions for Plaintiff to defend and indemnify Defendants under certain conditions and according to certain facts. Both policies also contained exclusions, the effect of which is to bar coverage in certain circumstances even when the aforementioned conditions are met. The relevant provisions of those policies are discussed in greater depth below.

On July 9, 2010, Plaintiff brought the instant suit in this Court. Doc. No. 1. On February 17, 2011, Plaintiff filed its Motion for Judgment on the Pleadings and Brief in Support (Doc. Nos. 18 and 19) pursuant to Federal Rule of Civil Procedure 12(c), asking this Court to declare that Plaintiff has no duty to defend or indemnify Defendants in the state court action. Plaintiff also filed an Appendix (Doc. No. 20) the following day, which included a variety of judicial opinions supporting Plaintiff's Motion. On April 29, 2011, Plaintiff filed a Supplemental Motion

3

to Amend/Correct its Brief in Support (Doc. No. 23), which attached L.R.E.'s amended complaint from the underlying state court action, thus adding additional material to the record and qualifying Plaintiff's earlier motion for possible conversion to a Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 12(d) and 56(a). On May 31, 2011, Defendants filed a Response to Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 24), as well as a Brief in Opposition (Doc. No. 25), styled as "Brief in Response to Plaintiff's Motion for Judgment on the Pleadings (Now Motion for Summary Judgment)". Plaintiff filed a Reply Brief on June 7, 2011, which included a request for this Court to defer any determination as to its duty to indemnify should we find that Plaintiff has a duty to defend under the relevant policies. Doc. No. 26 at 8-9. Both Plaintiff and Defendants obtained leave of court to submit Sur-Reply Briefs, both of which were filed on July 14, 2011 (Doc. Nos. 31 and 32).

## IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(d) permits a court to convert a Motion for Judgment on the Pleadings into a Motion for Summary Judgment when presented with matters outside the pleadings, but requires the court to give the parties a reasonable opportunity to present pertinent materials to the court prior to deciding the motion. *Wolk v. Westport Ins. Corp.,* 276 Fed. App'x 129, 132-33 (3d Cir.2008).

"Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007));

4

see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56 (a).[3] Issues of

fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *McGreevy v.

Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those which will affect the outcome

of the trial under governing law. *Anderson*, 477 U.S. at 248.

The moving party bears the initial responsibility of stating the basis for its motion and

identifying those portions of the record which demonstrate the absence of a genuine issue of

material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing

summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but

"must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart

Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal citations omitted); *Matsushita Elec. Indus. Co.

v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); see also *Podobnik v. U.S. Postal Serv.*, 409

F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present

more than just bare assertions, conclusory allegations or suspicions to show the existence of a

genuine issue" (internal quotation marks omitted)).

## V.    DISCUSSION

The Court first addresses the conversion of Plaintiff's Motion for Judgment on the

Pleadings to a Motion for Summary Judgment, which Defendants do not oppose. As already

noted, Plaintiff attached, along  with its Supplemental Motion to Amend/Correct its Brief in

Support (Doc. No. 23), the amended complaint from the underlying state court action. The

amended complaint contains additional allegations concerning the injuries suffered by L.R.E. As

will be discussed further below, this additional information is relevant to the Court's

---

[3] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as
subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue'
bec[ame] genuine 'dispute.'" Fed. R. Civ. P. 56 advisory committee's note, 2010 amend.

determination of whether Plaintiff had a duty to defend under the relevant insurance policies, and the Court will therefore consider it for purpose of this Motion. In addition, Defendants have had ample opportunity to present pertinent materials to the Court prior to this decision, thus satisfying the standard for conversion to summary judgment motions as set forth in *Wolk*. Accordingly, Plaintiff's original Motion will be considered as a Motion for Summary Judgment.

## A. Duty to Defend

In its Motion for Summary Judgment, Plaintiff asks this Court to declare that it has no duty to defend or indemnify Defendants with regard to the underlying state court suit. For their part, Defendants oppose the Motion, and ask us to declare that Plaintiff did have a duty to continue to defend and indemnify them under the relevant insurance policies.[4]   When considering whether a duty to defend exists, we look to the Third Circuit, which has stated:

> Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage. The duty to defend is a distinct obligation, different from and broader than the duty to indemnify. Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage. If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend. Both the duty to defend and the duty to indemnify "flow from a determination that the complaint triggers coverage."

*Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225-26 (3d Cir. 2005) (internal citations omitted); see also *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (Pennsylvania law provides that "[a] carrier's duty to defend and indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage."). Furthermore, "Pennsylvania's courts have taken a relatively broad view in discerning whether a complaint triggers an insurer's duty to defend."

---

[4] However, Defendants have not filed their own Motion for Summary Judgment to that effect.

*Berg Chilling Sys., Inc. v. Vicarb, Inc.*, 70 F. App'x 620, 624 (3d Cir. 2003). The Third Circuit has also explained that "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. That expectation is governed by the unambiguous language of the insurance policy." *Essex Ins. Co. v. Starlight Mgmt. Co.*, 198 F. App'x 179, 183 (3d Cir. 2006) (internal citations and quotation marks omitted).

Where coverage or an insurer's duty to defend is at issue, the insured has the initial burden of establishing coverage under the policy. When courts evaluate such claims, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. *Berg Chilling Sys., Inc.* 70 F. App'x at 624. Should an insurer rely on a policy exclusion as the basis for denying coverage, the insurer bears the burden of proving that the exclusion applies. See *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir.2009). Policy exclusions are strictly construed against the insurer and in favor of the insured. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001).

Pennsylvania law applies to the interpretation of the insurance contracts at issue. As the Third Circuit has recently explained in *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154 (3d Cir. 2011):

> The rules of analysis of insurance policies in Pennsylvania are well established. The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy. A policy must be read as a whole and its meaning construed according to its plain language.
> The burden of drafting with precision rests with the insurance company, the author of the policy. An ambiguity in contract language exists when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense. Where a term is ambiguous, it is to be construed against the insurer, in favor of the insured. The policy rationale underlying strict application of the doctrine is that because most insurance agreements are drafted by the insurance industry, they are essentially contracts of adhesion.

> Where, however, the language of the contract is clear and unambiguous, a
> court is required to give effect to that language. Courts should not distort the
> meaning of the language or strain to find an ambiguity. A contract is not rendered
> ambiguous merely because the parties disagree about its construction.

*Meyer*, 648 F.3d at 163-64 (citations and quotation marks omitted).

With these principles in mind, we evaluate whether Plaintiff had a duty to defend under
the relevant insurance policies, heretofore known as "Coverage A" and "Coverage B".

## 1. Coverage A

The Insuring Agreement to Coverage A states that Plaintiff "will pay those sums that the
insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property
damage' to which this insurance applies." Doc. No. 1-3 at 61. The term "bodily injury" is
subsequently defined in the policy as "bodily injury, sickness, or disease sustained by a person,
including death resulting from any of these at any time." Doc. No. 1-3 at 73.

Based on this language, Plaintiff argues that the bulk of the injuries alleged by L.R.E. in
the underlying tort action – including humiliation, embarrassment, loss of self-esteem, stress,
nausea, exhaustion, migraine headaches, depression, severe mental anguish, diagnosis of post-
traumatic stress disorder, loss of concentration, and similar afflictions relating generally to
L.R.E.'s mental health – fail to constitute "bodily injuries" under the subject policy and thus do
not implicate coverage under this subsection. Doc. No. 19 at 7-12; Doc. No. 23 at 5-6. In
support, Plaintiff cites the subject policy, Doc. No. 19 at 8, as well as several Pennsylvania cases
holding that allegations of psychological trauma, embarrassment, and humiliation are insufficient
to trigger coverage where, as here, the insuring agreement unambiguously requires a "bodily
injury." Doc. No. 19 at 10 (citing *Philadelphia Contributionship Ins. Co. v. Shapiro*, 798 A.2d
781 (Pa. Super. 2002); *Board of Public Education v. National Union Fire Ins. Co.*, 709 A.2d 910
(Pa. Super. 1998)).

8

Although Plaintiff's recitation of Pennsylvania law is ultimately correct, the aforementioned rule – to the extent that it is applicable to the broad litany of afflictions named above – does not end the analysis, as Plaintiff readily concedes that the remaining injuries alleged by L.R.E. in her amended complaint – namely, contusions to her back, buttocks, and abdomen, and bruising to her vaginal area – "probably do" amount to allegations of "bodily injury" under the subject policy. Doc. No. 23 at 5-6, 9; Doc. No. 23-1 at ¶ 44. In light of this apparent concession by Plaintiff that the bruising alleged by L.R.E. is "probably" sufficient to implicate coverage under Coverage A, this Court will assume, for purpose of argument, that coverage is in fact implicated under the subject policy, at least as an initial matter. As such, the Court will now consider whether an exclusion to that coverage applies.

Plaintiff avers that the Employer's Liability Exclusion found in Coverage A plainly applies in this action to bar coverage for the bodily injuries sustained by L.R.E., an "employee" of the insured. Doc. 23 at 9-12. In relevant part, the Employer's Liability Exclusion unambiguously precludes coverage for "'Bodily injury' to (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." Doc. No. 23 at 9-10; Doc. No. 1-3 at 62. Plaintiff further avers that the injuries allegedly sustained by L.R.E. in the underlying action, which ostensibly bring her tort claims against Defendants within the provision of Coverage A, fall under this exclusion. Doc. No. 23 at 9-12. For their part, Defendants offer no counterargument to this averment by Plaintiff.

Both the Pennsylvania Supreme Court and the Third Circuit, interpreting Pennsylvania law, have long held that in the context of an employer's liability exclusion, the phrase "arising out of and in the course of employment by the insured" is satisfied by "but for" causation – i.e., a

9

cause and result relationship or other "obvious causal connection" between the plaintiff employee's alleged "bodily injury" and her employment with the insured. See *Forum Ins. Co. v. Allied Security, Inc.*, 866 F.2d 80, 83 (3d Cir. 1989); *McCabe v. Old Republic Ins. Co.*, 425 Pa. 221, 223 (Pa. 1967). Likewise, several district courts both within and outside Pennsylvania have expressly found that such an exclusion plainly bars claims of sexual harassment and assault brought by an employee of the insured. See, e.g., *Nautilus Ins. Co. v. Gardner*, 2005 WL 664358 at \*5 (E.D. Pa. Mar. 21, 2005); *Miller v. Quincy Mutual Fire Ins. Co*, 2003 WL 23469293 at \*9 (E.D. Pa. Dec. 4, 2003); *Truck Ins. Exchange v. Gagnon*, 33 P.3d 901 at 904-5 (N.M. App. 2001); *David v. Nationwide Mut. Ins. Co.*, 665 N.E.2d 1171, 1174 (Ohio App. 1995).

Here, the underlying tort complaint specifically alleges that L.R.E. was at work, performing her "closing responsibilities" when she was assaulted and forcibly raped by Defendant Hines. Doc. No. 1-2 at ¶ 32; Doc. No. 23-1 at ¶ 32. Likewise, the underlying complaint expressly avers that L.R.E. was "in the course of [performing] her clean-up duties" when she was trapped in the walk-in cooler by Defendant Klavuhn and sexually assaulted. Doc. No. 1-2 at ¶ 38; Doc. No. 23-1 at ¶ 38. Therefore, the bodily injuries alleged by L.R.E. in the underlying tort action would not have occurred "but for" L.R.E.'s employment with Defendant Wenventure. Accordingly, the Court finds that the Employer's Liability Exclusion, found in Coverage A of the Commercial General Liability policy, exempts Plaintiff from the duty to defend under Coverage A.

## 2. Coverage B

This does not end the matter, as Defendants contend that the allegations in the underlying tort complaint, as amended, trigger coverage under the subject insurance policy pursuant to the Insuring Agreement to Coverage B. The relevant language states that Plaintiff "will pay those

10

sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and *duty to defend the insured against any 'suit' seeking those damages*." Doc. No. 25 at 12; Doc. No. 1-3 at 65 (emphasis added). The term "personal and advertising injury" is defined in the policy to mean "injury, including consequential 'bodily injury,' arising out of . . . (a) False arrest, detention, or imprisonment." Doc. No. 25 at 13-14; Doc. No. 1-3 at 74. Thus, under the terms of Coverage B, Plaintiff has a duty to defend Wenventure, Inc. and Wendy's International, Inc. for all suits seeking damages that Defendants may become legally obligated to pay for injuries *arising out of* false imprisonment.

In this context, both Pennsylvania courts and the Third Circuit have consistently interpreted the term "arising out of" in insurance contracts to denote "but for" causation requiring only a "causal connection" between the injury and the underlying tort. See *Essex Ins. Co. v. RMJC, Inc.*, 306 Fed. Appx. 749, 752 (3d Cir. 2009) ("[C]ourts applying Pennsylvania law have held [that] the phrase ["arising out of"] denotes but for causation both where it defines what is included in coverage and where it delineates exclusions.") (quoting *Forum Ins. Co. v. Allied Sec., Inc.*, 866 F.2d 80, 82 (3d Cir. 1989)); *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997) (stating that under Pennsylvania law, the term "'arising out of' means causally connected with, not proximately caused by") (quoting *Erie Ins. Exchange v. Eisenhuth*, 305 Pa. Super. 571, 574 (Pa. Super. Ct. 1982)); Thus, to find that Plaintiff has a duty to defend in the instant action under Coverage B of the subject policy, this Court need not determine that the injuries alleged by L.R.E. in the underlying tort action were proximately caused by false imprisonment. Rather, the Court need only determine that the injuries alleged by

L.R.E. were at least "causally connected" to the allegation that L.R.E. was falsely imprisoned –
in essence, that L.R.E. would not have suffered the injuries "but for" her false imprisonment.

In the underlying state action, L.R.E.'s amended complaint plainly alleges that she was
falsely imprisoned by Defendant Hines; that during this imprisonment Defendant Hines raped
and sexually assaulted her; and that as a result of this experience L.R.E. suffered emotional and
physical injuries including: humiliation, embarrassment, loss of self-esteem, stress, nausea,
exhaustion, migraine headaches, depression, severe mental anguish, diagnosis of post-traumatic
stress disorder, loss of concentration, self-destructive behaviors including suicidal ideation, and
similar mental afflictions, as well as physical contusions to her back, buttocks, and abdomen, and
bruising to her vaginal area. Doc. No. 23-1 at ¶¶ 32, 44, 49-54. Likewise, L.R.E.'s amended
complaint alleges that she was falsely imprisoned by Defendant Klavuhn in a walk-in cooler and,
during that imprisonment, was subjected to unwanted touching and intrusions upon her personal
dignity that directly resulted in severe personal injuries. Doc. No. 23-1 at ¶¶ 38, 44, 62-74. In
light of these allegations, this Court finds that "but for" the instances of false imprisonment
alleged by L.R.E. in the underlying tort complaint, L.R.E. would not have been raped by
Defendant Hines or assaulted by Defendant Klavuhn, and would not have suffered the multitude
of emotional and physical injuries alleged to follow from these incidents.

For its part, Plaintiff argues that Coverage B cannot implicate coverage under the facts
alleged by L.R.E. because L.R.E. does not specifically allege false imprisonment against the
*insured* – i.e., the Defendants in this action. Accordingly, Plaintiff argues that because the false
imprisonment claims were brought only against *Hines and Klavuhn*, and not against the insured,
it is impossible for the insured to be held liable for any claims of false imprisonment, as no such
claims have been brought against them. Doc. No. 26 at 3-6. However, Plaintiff misconstrues the

12

policy's terms, as the Insuring Agreement to Coverage B clearly and unambiguously states that Plaintiff "will have the right and *duty to defend* the insured against any 'suit'" for "those sums that the insured becomes legally obligated to pay as damages because of [injury, including consequential 'bodily injury,' arising out of false imprisonment]" (emphasis added). It is therefore irrelevant whether L.R.E. actually brought a claim for false imprisonment against Defendants in the underlying tort action, so long as the actual claims and injuries alleged against Defendants can be said to "arise out of" the false imprisonment alleged against Hines and Klavuhn. See *Travelers Prop. Cas. Co. of Am. v. Mericle*, 2010 WL 3505117 at \*8 (M.D. Pa. Aug. 31, 2010) ("[T]he duty to defend inquiry is not controlled simply by looking at the captions for the underlying causes of action, and Travelers may still owe a duty to defend even though no claims for false imprisonment are brought against Mericle or Mericle Construction. Instead, this Court must determine whether the underlying suit "arises" out of a claim for false imprisonment."). Accordingly, the allegations contained in L.R.E.'s underlying tort complaint plainly raise the possibility that coverage could be implicated under the subject policy

Plaintiff next argues that the Employment Related Practices Exclusion, which appears as an endorsement to the subject policy, nonetheless applies to bar coverage in this case. In relevant part, the Employment Related Practices Exclusion bars coverage for "'[p]ersonal and advertising injury to: (1) A person arising out of any . . . (c) Employment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, or discrimination *directed at that person*." Doc. No. 26 at 7; Doc. No. 1-3 at 78; Doc. No. 1-6 at 52. In support, Plaintiff cites to several non-controlling authorities from other states holding that similar exclusions applied to bar coverage where subject claims arose from sexual harassment – and, in some instances, sexual assault (other than rape) – by a

13

supervisor. Doc. No. 23 at 13-16 (citing *Miller v. McClure*, 742 A.2d 564 (NJ App. 1998); *Parts Inc. v. Utica Mutual Ins. Co.*, 602 F. Supp. 2d 617 (D. Md. 2009); *Agricultural Ins. Co. v. Focus Homes, Inc.*, 212 F.3d 407 (8th Cir. 2000)).

In response, Defendants point to *Miller v. Quincy Mutual Fire Ins. Co*, 2003 WL 23469293 (E.D. Pa. Dec. 4, 2003), which found that because the relevant exclusion applied only to employment related practices, policies, acts or omissions *directed at the person claiming injury*, such an exclusion did not bar coverage where the employment related practices in question were directed at the *supervisors* charged with harassment rather than the injured plaintiff. Notably, the court in *Miller* also specifically distinguished *Miller v. McClure* and *Agricultural Ins. Co. v. Focus Homes, Inc.* because the relevant exclusion in these cases did not contain the words "directed at that person" and thus was plainly broader than the exclusion at issue. *Miller*, 2003 WL 23469293 at *10.

In light of this distinction between the Employment Related Practices Exclusion at issue in this case and the exclusions at issue in the cases relied on by Plaintiff, this Court finds – in accordance with *Miller* – that the *McClure* and *Agricultural Ins. Co.* cases are inapposite and do not answer the current dispute. As the Third Circuit has noted, when an insurer relies on a policy exclusion as the basis for denying coverage, the insurer bears the burden of proving that the exclusion applies, and policy exclusions are strictly construed against the insurer and in favor of the insured. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir.2009); *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001). The plain language of the insurance contract is insufficient to meet this burden, and absent controlling authority to the contrary, the Court declines to interpret the Employment Related Practices Exclusion as unambiguously barring coverage.

14

Given that the underlying suit implicates Coverage B, and that the exclusions cited by Plaintiff do not bar coverage, there is sufficient evidence in the record to find in favor of Defendants that Coverage B mandates that Plaintiff has a duty to defend Wenventure, Inc. and Wendy's International, Inc. in the underlying state court suit. The Court will therefore **DENY** Plaintiff's Motion for Summary Judgment as to the duty to defend. However, as already noted, Defendants have not filed their own Motion for Summary Judgment on this matter. Nevertheless, the Court finds there is sufficient evidence in the record to grant summary judgment for the nonmovant Defendants as to the duty to defend, pursuant to Federal Rule of Civil Procedure 56(f). Rule 56(f) requires the Court to give the parties a reasonable time to respond to this notice. Accordingly, if Plaintiff wishes to raise disputes of material fact in the record that are relevant as to whether Coverage B applies, the Court grants Plaintiff leave to file a motion to that effect. Should Plaintiff not file such a motion by April 30, 2012, the Court will enter summary judgment in favor of Defendants and find that Plaintiff has a duty to defend the underlying state court action under Coverage B of the insurance policy at issue. If Plaintiff files such a motion, Defendants will have 21 days to file a response.

**B.  Duty to Indemnify**

We next address whether Plaintiff had a duty to indemnify Defendants under the insurance policy. In both its Motion for Judgment on the Pleadings and subsequent Amended Brief in Support, Plaintiff asked this Court to declare that it had neither a duty to defend nor indemnify in the underlying state action. However, Plaintiff later modified that argument, asking us to defer the issue of indemnification should we find that Plaintiff had a duty to defend. Doc. No. 26 at 8-9. In response to Plaintiff's original arguments, Defendants have asserted that Plaintiff did have a duty to indemnify, given the plain language of the policy and the allegations

15

of L.R.E.'s amended complaint.  Doc. No. 25; Doc. No. 31.  Defendants have made no direct argument regarding whether the issue of indemnification should be deferred, but presumably prefers that the Court address both issues forthwith, given their stated position in their Brief in Response. Doc. No. 25 at 22.

The Court agrees with Plaintiff that the issue of indemnification is not ready for adjudication at this point. As Pennsylvania courts have noted, the duty to indemnify is a "conditional obligation" dependent on a determination at trial as to whether the loss suffered is covered by the terms of the policy. *Unionamerica Ins. Co., Ltd. v. J.B. Johnson*, 806 A.2d 431, 434 (Pa. Super. 2002). In the instant case, there are still factual matters left to be determined in the underlying state action, and it is still unclear, depending on the outcome of that case, as to whether Plaintiff will have to indemnify Defendants at all. Accordingly, to the extent that Plaintiff asks us in its original motion to declare that it has no duty to indemnify Defendants in the underlying state court action, that motion is **DENIED** without prejudice as to the Plaintiff raising the issue again at a later date.

## VI. CONCLUSION

Based upon the foregoing, Plaintiff has not provided sufficient evidence, when viewed in the light most favorable to Defendants as the non-moving party, to allow the Court to determine that Plaintiff does not have a duty to defend under the insurance policy at issue in this case. On the contrary, the record indicates that Plaintiff *does* have a duty to defend Defendants under Coverage B of the insurance policy. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED** as to the duty to defend. The Court will enter summary judgment in favor of Defendants on this issue on April 30, 2012, unless Plaintiff is able to provide evidence demonstrating a dispute of material fact as to the duty to defend under Coverage B. The Court

16

also **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Summary Judgment as to the duty to indemnify. At the conclusion of the underlying state court action, Plaintiff is free to re-visit the issue of indemnification in this Court. An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FIREMEN'S INSURANCE COMPANY OF<br>WASHINGTON, D.C., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CIVIL ACTION NO. 3:10-CV-185 |
| | )    JUDGE KIM R. GIBSON |
| WENVENTURE, INC., d/b/a Wendy's Old | ) |
| Fashioned Hamburgers, WENDY'S | ) |
| INTERNATIONAL, INC., ROBERT LEE HINES, | ) |
| and BRIAN H. KLAVUHN, | ) |
| | ) |
| Defendants. | ) |

## ORDER

**AND NOW**, this 29th day of March 2012, upon consideration of Plaintiff's Motion for Judgment on the Pleadings, Brief in Support, and Appendix (Doc. Nos. 18, 19, and 20), Plaintiff's Supplemental Motion to Amend/Correct its Brief in Support (Doc. No. 23), Defendants' Response to Plaintiff's Motion for Judgment on the Pleadings and Brief in Opposition (Doc. Nos. 24 and 25), Plaintiff's Reply Brief (Doc. No. 26), Defendants' Sur-Reply Brief (Doc. No. 31), and Plaintiff's Sur-Reply Brief (Doc. No. 32), in accordance with the above Memorandum **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (formerly Motion for Judgment on the Pleadings) (Doc. No. 18) is **DENIED** as to Plaintiff's duty to defend Wenventure, Inc. and Wendy's International Inc. under the relevant insurance policy in the underlying suit, *L.RE. v. Wendy's Old Fashioned Hamburgers et. al.*, in the Court of Common Pleas of Cambria County, Pennsylvania, docket number 2009-6277.

2. Pursuant to Federal Rule of Civil Procedure 56(f), the Court **HEREBY GIVES**

**NOTICE** that it will enter **SUMMARY JUDGMENT** in favor of Defendants regarding the duty to defend under Coverage B on **April 30, 2012**, unless Plaintiff is able to provide evidence demonstrating a dispute of material fact as to the duty to defend under that coverage. The Court grants Plaintiff leave to file a motion to that effect, and should Plaintiff file such a motion, Defendants will have 21 days to file a response.

3. Plaintiff's Motion for Summary Judgment (formerly Motion for Judgment on the Pleadings) (Doc. No. 18) is **DENIED WITHOUT PREJUDICE** as to Plaintiff's duty to indemnify Wenventure, Inc. and Wendy's International Inc. under the relevant insurance policy in the same state court suit. Plaintiff is free to re-raise this issue after the conclusion of that action.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

19